1
2
3
4
5

DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
CLEMENT S. ROBERTS (SBN 209203)
croberts@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:   415-362-6666
Facsimile:    415-236-6300

6
7

Attorneys for Plaintiffs
The NET-A-PORTER Group and
The NET-A-PORTER Group Limited

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11
12
13

THE NET-A-PORTER GROUP LLC and
THE NET-A-PORTER GROUP
LIMITED,

                              Plaintiffs,

14

        v.

15

ECLIPSE IP, LLC,

16
17

                              Defendant.

Case No. 2:14-cv-08536

**COMPLAINT FOR DECLATORY
JUDGMENT**

**DEMAND FOR JURY TRIAL**

18
19
20
21
22
23
24
25
26
27
28

Plaintiffs The NET-A-PORTER Group LLC and The NET-A-PORTER Group Limited ("Plaintiffs" or "NET-A-PORTER") complains as follows:

## NATURE OF ACTION

1.      This is an action seeking Declaratory Judgment that twenty-two United States Patent ("Patents-in-Suit" or "Eclipse Patent Portfolio"), which are owned by Defendant Eclipse IP, LLC ("Eclipse" or "Defendant"), have not been infringed by NET-A-PORTER and are invalid.

2.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, Title 35 of the United States Code.

## THE PARTIES

3.      NET-A-PORTER is a New York corporation and a global premier online luxury fashion retailer.

4.      On information and belief, Eclipse is a Texas limited liability company with a place of business at 711 SW 24th, Boyton Beach, Florida 33435. On information and belief, Eclipse is the owner of the Patents-in-Suit.

5.      Upon information and belief, Eclipse is in the business of patent licensing through the threat of litigation.

6.      Upon information and belief, a key part of Eclipse's business model is sending letters, emails, and making telephone calls threatening patent litigation and following through on that threat.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) in that it arises under the United States Patent Laws.

8.      This Court has personal jurisdiction over the Defendant pursuant to the laws of the State of California, including California's long-arm statute and California Code of Civil Procedure § 410.10.

9.      Eclipse has filed at least 44 cases asserting patent infringement in this District, and has been involved in 123 lawsuits involving the Eclipse Patent Portfolio nationwide.

10.     Eclipse has litigated the Patents-in-Suit in this judicial district more than any other district.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## PATENTS-IN-SUIT / ECLIPSE PATENT PORTFOLIO

12.     On October 10, 2006, U.S. Patent No. 7,119,716 (the '716 Patent), entitled Response Systems and Methods for Notification Systems for Modifying Future Notifications was issued. Claims 1, 2, 4, 6, 7, 18, 19, 20, 41, 43, 44, 45, and 46 of the '716 Patent were found to be invalid for failing to satisfy 35 U.S.C. § 101.

13.     On June 20, 2006, U.S. Patent No. 7,064,681 (the '681 Patent), entitled Response Systems and Methods for Notification Systems was issued.  The '681 Patent resulted from a continuation application of the '716 Patent's application. Claims 1, 3, 4, and 6 of the '681 Patent were found to be invalid for failing to satisfy 35 U.S.C. § 101.

14.     On September 26, 2006, U.S. Patent No. 7,113,110 (the '110 Patent), entitled Stop List Generation Systems and Methods Based upon Tracked PCD's and Responses from Notified PCD's was issued. The '110 Patent resulted from a continuation application of the '716 Patent's application. Claims 1, 2, 7, and 8 of the '110 Patent were found to be invalid for failing to satisfy 35 U.S.C. § 101.

15.     On January 15, 2008, U.S. Patent No. 7,319,414 (the '414 Patent), entitled Secure Notification Messaging Systems and Methods Using Authentication Indicia was issued. The '414 Patent resulted from a continuation application of the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

16.     On January 20, 2009, U.S. Patent No. 7,479,899 (the '9,899 Patent), entitled Notification Systems and Methods Enabling a Response to Cause Connection Between a Notified PCD and a Delivery or Pickup Representative was issued. The '9,899 Patent

resulted from a continuation application of the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

17.   On January 20, 2009, U.S. Patent No. 7,479,900 (the '900 Patent), entitled Notification Systems and Methods that Consider Traffic Flow Predicament Data was issued.  The '900 Patent resulted from a divisional application of the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

18.   On January 20, 2009, U.S. Patent No. 7,479,901 (the '901 Patent), entitled Mobile Thing Determination Systems and Methods Based upon User-Device Location was issued. The '901 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

19.   On January 27, 2009, U.S. Patent No. 7,482,952 (the '952 Patent), entitled Response Systems and Methods for Notification Systems for Modifying Future Notifications was issued. The '952 Patent resulted from a divisional application of the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

20.   On March 17, 2009, U.S. Patent No. 7,504,966 (the '966 Patent), entitled Response Systems and Methods for Notification Systems for Modifying Future Notifications was issued. The '966 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

21.   On May 5, 2009, U.S. Patent No. 7,528,742 (the '742 Patent), entitled Response System and Methods for Notification Systems for Modifying Future Notifications was issued.  The '742 Patent claims priority to the '716 Patent, which had claims invalidated for claiming upatentable subject matter.

22.   On May 26, 2009, U.S. Patent No. 7,538,691 (the '691 Patent), entitled Mobile Thing Determination Systems and Methods Based upon User-Device Location was issued. The '691 Patent claims priority to the '716 Patent, which had claims invalidated for claiming upatentable subject matter.

23.     On July 14, 2009, U.S. Patent No. 7,561,069 (the '069 Patent), entitled Notification Systems and Methods Enabling a Response to Change Particulars of Delivery or Pickup was issued. The '069 Patent resulted from a divisional application of the '716 Patent, which had claims invalidated for claiming upatentable subject matter

24.     On January 25, 2011, U.S. Patent No. 7,876,239 (the '239 Patent), entitled Secure Notification Messaging Systems and Methods Using Authentication Indicia was issued. The '239 Patent resulted from a continuation application of the '414 Patent, which resulted from a continuation application of the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

25.     On November 29, 2011, U.S. Patent No. 8,068,037 (the '037 Patent), entitled Advertisement Systems and Methods for Notification Systems was issued. The '037 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

26.     On July 31, 2012, U.S. Patent No. 8,232,899 (the '2,899 Patent), entitled Notification System and Methods Enabling Selection of Arrival or Departure Times of Tracked Mobile Things in Relation to Locations was issued. The '2,899 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

27.     On August 14, 2012, U.S. Patent No. 8,242,935 (the '935 Patent), entitled Notification System and Methods Where a Notified PCD Causes Implementation of a Task(s) Based Upon Failure to Receive a Notification was issued. The '935 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

28.     On October 10, 2012, U.S. Patent No. 8,284,076 (the '076 Patent), entitled Systems and Methods for a Notification System that Enable User Changes to Quantity of Goods and/or Services for Deliver and/or Pickup was issued. The '076 Patent claims

priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

29.     On January 29, 2013, U.S. Patent No. 8,362,927 (the '927 Patent), entitled Advertisement Systems and Methods for Notification Systems was issued. The '927 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

30.     On February 5, 2013, U.S. Patent No. 8,368,562 (the '562 Patent), entitled Systems and Methods for a Notification System that Enable User Changes to Stop Location for Delivery and/or Pickup of Good and/or Service was issued. The '562 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

31.     On September 10, 2013, U.S. Patent No. 8,531,317 (the '317 Patent), entitled Notification Systems and Methods Enabling Selection of Arrival or Departure Times of Tracked Mobile Things in Relation to Locations was issued. The '317 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

32.     On October 22, 2013, U.S. Patent No. 8,564,459 (the '459 Patent), entitled Systems and Methods for a Notification System that Enable User Changes to Purchase Order Information for Delivery and/or Pickup of Goods and/or Services was issued. The '459 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

33.     On April 29, 2014, U.S. Patent No. 8,711,010 (the '010 Patent), entitled Notification Systems and Methods that Consider Traffic Flow Predicament Data was issued. The '010 Patent claims priority to the '716 Patent, which had claims invalidated for claiming unpatentable subject matter.

34.     Collectively the twenty-two patents identified in paragraphs 12 to 33 are the Patents-in-Suit and the known Eclipse Patent Portfolio.

35. All the Patents-in-Suit are related and claim priority to the '716 Patent.

### ECLIPSE'S THREATS AGAINST NET-A-PORTER

36. On October 7, 2014, Matt Olavi of the law firm Olavi Dunne LLP, counsel for Eclipse, sent a letter to Natalie Massenet, CEO of NET-A-PORTER Group LLC (the "Olavi letter").

37. The Olavi letter asserts that NET-A-PORTER infringes the Eclipse Patent Portfolio, warns that Eclipse "aggressively litigates patent infringement lawsuits," and gave November 11, 2014 as a cutoff date, after which, Eclipse "assume[s] that [NET-A-PORTER is] not interested in resolving this matter without litigation." A true and correct copy of that letter is attached hereto as Exhibit 1.

38. The Olavi letter specifically identifies twenty of the twenty-two patents in the Eclipse Patent Portfolio by patent number. The two unidentified patents—the '317 and '010 Patents—in the Olavi letter are both related to the '716 Patent and Eclipse has asserted the '317 Patent on five different occasions.

39. The Olavi letter states that a flash drive with copies of all the patents in Eclipse Patent Portfolio is enclosed. On information and belief, all twenty-two of the Patents-in-Suit, comprising the entire Eclipse Patent Portfolio, were included on this flash drive.

40. In the Olavi letter, Eclipse alleges that the "electronic messaging features of [NET-A-PORTER's] online ordering system" infringes the claims of the Eclipse Patents," and provides three claims as representative examples of NET-A-PORTER's alleged infringement of the Eclipse Patent Portfolio.

41. On September 4, 2014, District Court Judge George H. Wu, presiding over the case of *Eclipse IP LLC v. McKinley Equipment Corporation*, granted the defendant's Motion to Dismiss for Lack of Patentable Subject Matter, and invalidated every claim he was asked to consider from the '681, '110, and '716 Patents. This included invalidating the

asserted claims of one of the patents Eclipse used as a representative example of NET-A-PORTER's alleged infringement of the Eclipse Patent Portfolio.

42.     On or about September 19, 2014, Edward Turnbull, an individual associated with Eclipse, placed a telephone call to NET-A-PORTER, asking to speak with NET-A-PORTER's chairwoman Natalie Massenet.  He followed up with an email to a NET-A-PORTER employee, attaching the Olavi letter alleging infringement of the Patents-in-Suit (the "Turnbull email").

43.     The Turnbull email and attachment reaffirms Eclipse's aggressive posture, and concludes with the threat that Eclipse's "next step will be litigation."

44.     The Turnbull email and attachment included patents, which had claims declared invalid and included claims, as representative examples of NET-A-PORTER alleged infringement, that claimed the same abstract ideas as the claims Judge Wu invalidated.

45.     Eclipse's first representative example of NET-A-PORTER alleged infringement was Claim 1 of the '239 Patent.  This claim is extremely similar to the now invalid Claim 41 of the '416 Patent, except that it requires the party to have authentication information.

46.     Eclipse's second representative example of NET-A-PORTER alleged infringement was Claim 21 of the '716 Patent.  This claim is nearly indistinguishable from the now invalid Claims 1 and 18 of the '716 Patent except that it is directed to updating contact information as opposed to completing tasks generally.

47.     Eclipse's third representative example of NET-A-PORTER's alleged infringement was Claim 1 of the '9,899 Patent.  This claim is similar to the now invalid Claim 1 of the '110 Patent except that the communication is with a singular personal communication device instead of communicating with a plurality of personal communication devices.

48.     These three representative examples were provided both before and again after Judge Wu had ruled nearly identical claims invalid.

49.     Eclipse concludes the letter by offering a worldwide license to the entire Eclipse Patent Portfolio in exchange for $45,000 or threatening litigation.

50.     Eclipse's letter, telephone call, and email, as well as pattern of aggressive litigation show that there is a substantial controversy between the parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## FIRST CLAIM FOR RELIEF

## (Declaratory Judgment of Non-Infringement of the
## Patents-in-Suit / Eclipse Patent Portfolio)

51.     NET-A-PORTER incorporates by reference and realleges each of the allegations set forth in the preceding paragraphs as though fully set forth herein.

52.     NET-A-PORTER's online ordering system does not infringe the Patents-in-Suit, directly or indirectly.

53.     NET-A-PORTER's is not infringing, and has never infringed, any valid claim of the Patents-in-Suit either directly or indirectly, literally or under the doctrine of equivalents.

54.     NET-A-PORTER is entitled to a judgment declaring that it has never infringed and is not infringing any valid claim of the Patents-in-Suit.

## SECOND CLAIM FOR RELIEF

## (Declaratory Judgment of Invalidity of the
## Patents-in-Suit / Eclipse Patent Portfolio)

55.     NET-A-PORTER incorporates by reference and realleges each of the allegations set forth in preceding paragraphs as though fully set forth herein.

56.     All of the claims of the Patents-in-Suit are invalid under the United States Patent Act, including pursuant to 35 U.S.C. §§ 101, 102, 103, and 112.

57.     All of the claims of the Patents-in-Suit are invalid pursuant to 35 U.S.C. § 101 because they purport to claim unpatentable abstract concepts. For example, the some of the claims of the '716 Patent are directed to the abstract idea of assigning someone to perform a task and then waiting until they complete it.

58.     All of the claims of the Patents-in-Suit are invalid pursuant to 35 U.S.C. §§ 102 and/or 103 because they are anticipated or rendered obvious by prior art.

59.     All of the claims of the Patents-in-Suit are invalid pursuant to 35 U.S.C. § 112 because they are indefinite, not enabled, or lack sufficient written description.

60.     Based on Eclipse's letter, telephone call, and email to Incase, its threat of litigation for patent infringement of the entire Eclipse Patent Portfolio, Eclipse's pattern of litigation, and NET-A-PORTER's denial of infringement, an actual case or controversy exists as to whether Incase infringes any valid or enforceable claim of the Patents-in-Suit, and NET-A-PORTER is entitled to a declaration that the claims of the Patents-in-Suit are invalid.

### REQUEST FOR RELIEF

Therefore, NET-A-PORTER requests for judgment:

1.     That NET-A-PORTER has not infringed any claim of the patents in the Eclipse Patent Portfolio;

2.     That the claims of the patents comprising the Eclipse Patent Portfolio are invalid;

3.     That NET-A-PORTER be awarded its costs of suit, and pre- and post-judgment interest on any money judgment;

///
///
///
///
///

1    4.    That the Court declare this to be an exceptional case pursuant to 35 U.S.C. §

2  285, and award NET-A-PORTER its reasonable attorney's fees;

3    5.    For such other relief as the Court deems proper.

4  Dated:  November 4, 2014                      DURIE TANGRI LLP

5

6                                     By: _____/s/ Daralyn J. Durie_____
                                              Daralyn J. Durie

7                                         Attorneys for Plaintiffs
                                          The NET-A-PORTER Group and The NET-A-
8                                         PORTER Group Limited

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28